

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charley Lockhart
State Treasurer
Austin, Texas

Dear Sir:

Opinion No. O-2491
Re: Amount of stamps required for
a supplemental indenture of
trust to be recorded under
peculiar facts.

In your letter of June 26, 1940, you submit to us
the following facts: in 1881, a certain railroad company issued
bonds, securing the same by deed of trust on property situated
in this and another state, and which was recorded in Texas at
that time, long prior to the effective date of Article 7047e,
Vernon's Civil Statutes. The railroad now desires to file a
supplemental deed of trust, covering property which has been
acquired since the first mortgage was given. Part of this
property is in Texas and part in the other state. The obli-
gations secured by the second mortgage are the identical
bonds issued in 1881 and still secured by the first mortgage.
This supplemental or second mortgage does not contain a des-
cription of any of the property described in the first mort-
gage nor does it bring forward any of the terms of the prior
mortgage, not being a re-affirmance or renewal thereof in any
sense.

In substance you request our opinion as to the prop-
er method of calculating the amount of stamps which must be
placed upon this supplemental indenture to entitle the same
to record.

Section (a) of said Article 7047e reads as follows:

"(a) Except as herein otherwise provided
there is hereby levied and assessed a tax of Ten
(10¢) Cents on each One Hundred ($100.00) Dollars
or fraction thereof, over the first Two Hundred
($200.00) Dollars, on all notes and obligations
secured by chattel mortgage, deed of trust, me-
chanic's lien contract, vendor's lien, conditional

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Charley Lockhart, Page 2

sales contract and all instruments of a similar nature which are filed or recorded in the office of the County Clerk under the Registration Laws of this State; provided that no tax shall be levied on instruments securing an amount of Two Hundred ($200.00) Dollars, or less. After the effective date of this Act, except as hereinafter provided, no such instrument shall be filed or recorded by any County Clerk in this State until there has been affixed to such instrument stamps in accordance with the provisions of this section; providing further that should the instrument filed in the office of the County Clerk be security of an obligation that has property pledged as security in a State or States other than Texas, the tax shall be based upon the reasonable cash value of all property pledged in Texas in the proportion that said property in Texas bears to the total value of the property securing the obligation; and providing further that, except as to renewals or extensions of accrued interest, the provisions of this section shall not apply to instruments given in renewal or extensions of instruments theretofore stamped under the provisions of this Act or the one amended hereby, and shall not apply to instruments given in the refunding of existing bonds or obligations where the preceding instrument of security was stamped in accordance with this Act or the one amended hereby; provided further that the tax levied in this Act shall apply to only one instrument, the one of the greatest denomination, where several instruments are contemporaneously executed to secure one obligation; and provided further that when once stamped as provided herein an instrument may be recorded in any number of counties in this State without again being so stamped. This section shall not apply to instruments, notes, or other obligations taken by or on behalf of the United States or of the State of Texas, or any corporate agency or instrumentality of the United States, or the State of Texas in carrying out a governmental purpose as expressed in any Act of the Congress of the United States or of the Legislature of the State of Texas, nor

Honorable Charley Lockhart, Page 3

shall the provisions of this section apply to
obligations or instruments secured by liens on
crops and farm or agricultural products, or to
livestock or farm implements, or an abstract of
judgment.

"If the amount secured by an instrument is
not expressed therein, or if any part of the
security described in any such instrument appears
to be located without the State of Texas, the
County Clerk shall require proof by written affi-
davits of such facts as may be necessary to deter-
mine the amount of the tax due." (Underscoring
ours)

Prior to the amendment of this statute by the 46th
Legislature, it contained no provision whatsoever for an ap-
portionment of the tax in cases where the obligation is se-
cured by lien upon property outside of this State. This led
to some very hard results and to litigation. Cities Service
Oil Company sought to record a deed of trust securing a bond
issue of approximately $43,000,000. Only about 10% of the
property described in the indenture was located in Texas.
Payment of the required tax of about $43,000 was made under
protest and suit filed for its return by Cities Service Oil
Company in the Federal District Court at Austin. The case
was tried and Judge McMillan awarded the plaintiff recovery,
holding that in effect the tax was being levied upon property
located outside of Texas. An appeal was perfected but by
this time the 46th Legislature had made the amendment. Cities
Service Oil Company proposed to stamp the instrument, arriv-
ing at the amount by apportionment as provided in the new
statute, and again present the same for record if the State
would dismiss its appeal, and this was done. Hence, there
was no decision of the case by an appellate court.

It is manifest that this particular part of the
amendment to the Act was intended to cure this possible de-
fect in the old statute as pointed out in the Cities Ser-
vice Oil Company case.

With further reference to the facts instantly con-
cerned we understand that the bond issue of 1891 was for
$60,000,000. Three fourths of the property described in the
first mortgage was located in Texas and the other one fourth
in Arkansas. The property described in the second mortgage
is worth only about $200,000, of which three fourths or
$150,000 worth thereof is in Texas, the remainder in Arkan-
sas. To hold that the amount of the tax should be ascer-

Honorable Charley Lockhart, Page 4

tained by taking the proportion which the Texas property described in both mortgages bears to all the property described in both, thus attempting to exact a tax of $45,000 would not be getting away from such criticism of the old statute. This would have one of two effects, that is, of making it a tax on the note itself (and we have heretofore held that it is a tax upon the privilege of using the records), or it would be levying the tax upon the mortgage which was legally recorded many years ago. In our opinion such a construction is not required and should not be given.

Nor can the amount of the tax be ascertained by taking the proportion which the Texas property in the second mortgage bears to all the property in that mortgage. For, the statute quite plainly requires the consideration of the property in the foreign state, as a reducing factor, regardless of what mortgage it may be described in.

We will again quote the pertinent part of the statute, making parenthetical insertions to clarify our thought as to its meaning, as applied to a situation of this kind. "The tax shall be based upon the reasonable cash value of all property pledged in Texas (in the tendered mortgage) in the proportion that said property in Texas (in the tendered mortgage) bears to the total value of the property securing the obligation."

In the instant case, the sum upon which the tax is to be calculated is arrived at as follows: take the proportion which the Texas property in the second mortgage bears to all of the property in both mortgages and multiply the fraction into the amount of the bonds secured.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 12, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

By Glenn R. Lewis

Glenn R. Lewis
Assistant

GRI:rw



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN